Sara L. Bloom, ASB 1509071
Law Office of Sara Bloom
1120 Huffman Rd Ste 24-785
Anchorage, AK 99515
(907) 519-3613
sara@907lawyer.com

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAURIE THORPE,<br><br>       *Plaintiff*,<br><br>*v.*<br><br>DOUG BERGUM, in his official capacity as the Secretary of the U.S. Department of the Interior,<br><br>       *Defendant.* | Case No. 3:25-cv-00077-SLG |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

1.      Plaintiff Laurie Thorpe, by her undersigned attorney, brings this action for relief and damages based on the denial of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq**.**, and the Age Discrimination in Employment Act of 1967, as amended, to remedy acts of employment discrimination at the U.S. Department of the Interior.

1

2.      Plaintiff contends that Department of the Interior officials discriminated against her because of her sex (female) and age (YOB 1962), retaliated against her for having complained about discrimination, and created a hostile work environment.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343, 42 U.S.C. § 2000e-5, 29 U.S.C. § 791, et seq.

4.      Venue is appropriate in this Court under 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff Laurie Thorpe, a female, is a citizen of the United States and a resident of the State of Alaska.  At all times relevant to this suit, she was employed with the Department of the Interior as a Planning and Environmental Coordinator, GS-0303- 12, in the Bureau of Land Management ("BLM"), Anchorage District Office ("ADO") in Anchorage, Alaska.  Plaintiff resides at: 391 E. Lochcarron Drive, Wasilla, AK 99654.

6.      Defendant Doug Bergum is the Secretary of the Department of the Interior. The Secretary is being sued in his official capacity as provided by law based on his executive responsibility for administering Department of the Interior personnel policies and his responsibility to enforce and to promote equal employment opportunity throughout the agency.  During the relevant time period, the Department of the Interior employed well over 500 employees.  Defendant's address is Secretary

2

of U.S. Department of the Interior, Office of the Secretary, 1849 C St., NW, MS-4106, Washington, DC 20240.

7.      Callie Webber is not a defendant in this lawsuit but was named in Plaintiff's Equal Employment Opportunity Commission ("EEOC") complaint as a discriminating official.  Ms. Webber was the Acting District Manager and one of Plaintiff's supervisors in the Bureau of Land Management.

8.      Christine Mahlen is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. Ms. Mahlen was a Human Resources Officer at the Department of the Interior.

9.      Tom Heinlein is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. He was the Acting State Director at the Bureau of Land Management.

10.     Erika Reed is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official.  She was the Acting Associate State Director.

11.     Marnie Graham is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. She was the Manager of the Glennallen Field Office.  Ms. Graham was in this position for more than one year.

12.     Joy Edge is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. She was a Human Resources Specialist.

13.     Ken Slaughter is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. He was the Deputy State Director for Fire and Aviation.

14.     Ted Murphy is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. Mr. Murphy was the BLM Alaska Associate State Director.

15.     Leslie Holland is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. She was the BLM Alaska Deputy State Director of Support Services.

## STATEMENT OF FACTS

16.     Plaintiff's sex is female. She was born in 1962. Plaintiff first participated in protected EEO activity in June 2021, when she filed an EEO complaint.

17.     Plaintiff worked as a Planning and Environmental Coordinator, GS-0301-12, in the Bureau of Land Management in Anchorage.

18.     The officials identified in paragraphs 7-15 were aware of Plaintiff's sex, age, and prior EEO activity.

19.     On August 24, 2021, Plaintiff made initial contact with an EEO Counselor in Defendant's EEO Office. On September 29, 2021, Plaintiff filed a formal EEO complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended, (Title VII) and the Age Discrimination in Employment Act of 1967, as amended (ADEA).

4

20.     On October 12, 2021, Defendant accepted the claims initially raised in

Plaintiff's complaint. On January 7, 2022, January 12, 2022, and January 14, 2022,

Plaintiff sought to amend her complaint to include additional claims.

On January 13, 2022, and January 28, 2022, the Agency accepted the additional

claims via Notices of Amended Acceptance. Defendant accepted the following

claims:

> Plaintiff was subjected to disparate treatment and/or harassment based on
>
> sex (female), age (YOB: 1962), and reprisal (prior EEO activity) when:

> A.  From August 13, 2021, to August 24, 2021, Acting District Manager
>
>     and Human Resources (HR) Officer utilized a non-competitive
>
>     appointment method to fill and process a detail to the GS-13
>
>     Associate District Manager position, preventing Plaintiff an equal
>
>     opportunity to apply and compete for the position;

> B.  Between August 20, 2021, and December 21, 2021, HR Officer
>
>     delayed processing Plaintiff's name change request, "meddled" with
>
>     Plaintiff's Employee Express account, and did not ensure Plaintiff
>
>     was recognized for federal service milestones of 25, 30, and 35
>
>     years;

> C.  On August 23, 2021, and August 24, 2021, Acting District
>
>     Manager, HR Officer, Field Office Manager, Glenallen Field

Office (GFO), and HR Specialist "disrespected" and "demoralized" Plaintiff when they intentionally copied Plaintiff on emails regarding the placement and onboarding of the individual non-competitively selected for the Associate District Manager position;

D. As of September 29, 2021, Acting District Manager has not added Plaintiff's name to the Bureau of Land Management (BLM) Alaska Organizational Chart;

E. Since around November 2021, Deputy State Director, Support Services Division (SSD), has delayed processing Plaintiff's performance award for excellent work during Plaintiff's supervisory detail in the SSD from December 2020 through April 2021;

F. On December 8, 2021, the Associate Ethics Counselor emailed Plaintiff to notify her that she had not met the annual ethics training requirement for fiscal year (FY) 2021;

G. On January 6, 2022, during a periodic GFO National Environmental Policy Act (NEPA) interdisciplinary team meeting, Field Office Manager repeatedly interrupted Plaintiff while she attempted to share updates and outstanding needs during the meeting; and

H. On January 12, 2022, HR, under the advisement of HR Officer, HR

6

Specialist, and Deputy State Director, notified Plaintiff of its determination that she is ineligible for the GS-12 Planning and Environmental Specialist position, under vacancy announcement number AKDE-22-11259766-AV.

21.    On February 7, 2022, Plaintiff alleged that she was constructively discharge from the agency on February 28, 2022. She alleged various instances of harassment. She claimed that the harassment made her workplace intolerable. She alleged that:

A.    RMO6 (Ms. Webber) and RMO4 (Ms. Mahlen) did not give her the opportunity to apply and compete for a GS-13, Associate District Manager detail in Alaska, and instead placed RMO6's (Ms. Webber) friend into the position;

B.    She was not recognized on any of the BLM Alaska Organization charts;

C.    RMO5 (Ms. Holland) delayed processing of a STAR award until the day she was interviewed in this case;

D.    She received notice on January 12, 2022, that she was disqualified for a position management knew she held for 5 years with performance reviews of "4" and "5" because her application lacked the 40 hours per week requirement;

7

E. She received an email on December 7, 2021, copied to her supervisor and other managers, indicating that she had not completed the Annual Ethics Training requirement, when she had, in fact, completed it on October 18, 2021;

F. She sent an email to HR on August 20, 2021, requesting a name change, and as of December 21, 2021, her name still had not been changed in the system;

G. BLM HR meddled with her Employee Express account to prohibit her access to the account and to cause her stress and problems with her pay, benefits, and history;

H. RMO4 (Ms. Mahlen), under the direction of RMO5 (Ms. Holland), RMO1 (Ms. Reed), and RMO2 (Mr. Heinlein), failed to recognize her federal service milestones in retaliation for her EEO complaints;

I. RMO7 (Ms. Graham) interrupted her several times during an Interdisciplinary Team meeting on January 6, 2022, and undermined her to thwart her success on a project document;

J. After proving him wrong and settling a prior EEO case, RMO2 (Mr. Heinlein) was promoted to Acting State Director and since then has directed the BLM Alaska leadership, including RMO3 (Mr.

8

Murphy) and RMO1 (Ms. Reed), to implement his mission to get rid of her;

K. RMO3 (Mr. Murphy) worked against her being selected for a GS-13 Vegetation Program Lead position she qualified for and interviewed for, and worked against her interest in other positions she was interested in and qualified for; and

L. RMO4 (Ms. Mahlen) provided no support in response to Complainant's repeated requests for assistance in accessing the Employee Express site when she learned of Complainant's planned retirement, as part of the collaborative effort of the BLM Alaska leadership to 'demoralize me into nothingness.'

## EXHAUSTION OF REMEDIES

22.    Plaintiff exhausted all administrative requirements that apply to the processing of her complaints, including the filing of complaints with the Agency's EEO office.

## STATEMENT OF CLAIMS

COUNT I: Sex Discrimination in Violation of Title VII

23.     Plaintiff adopts and incorporates by reference paragraphs 1-22 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf,

9

subjected her to discrimination on the basis of her sex when the Agency treated her less favorably than male employees.

24.     Plaintiff adopts and incorporates by reference paragraphs 1-23 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to a pattern of disparate treatment based on her sex.

25.     As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT II: Hostile work environment

26.     Plaintiff adopts and incorporates by reference paragraphs 1-25 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her sex, age, and prior EEO activity when it subjected her to a continuous pattern of harassment.

27.     As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and

10

mental distress, embarrassment, humiliation, physical ailments such as heart problems, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT III: Age discrimination in violation of the ADEA

28.     Plaintiff adopts and incorporates by reference paragraphs 1-27 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her age when it treated her less favorably than younger employees.

29.     Plaintiff adopts and incorporates by reference paragraphs 1-28 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to a pattern of disparate treatment based on her age.

30.     As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT IV: Retaliation

31.     Plaintiff adopts and incorporates by reference paragraphs 1-30 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she raised EEO allegations of discrimination from June 2021 to February 28, 2022.

32.     Plaintiff adopts and incorporates by reference paragraphs 1-31 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she initiated an informal EEO complaint and participated in the EEO process.

33.      As a result of Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical injury, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorney fees, the costs of this litigation, and accrued interest.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff respectfully requests this Court to:

A.     Enter judgment for Plaintiff against Defendant;

B.     Declare that the conduct of Defendant is in violation of Title VII;

C.      Award Plaintiff back pay, promotion, and performance awards equal to

those of similarly situated employees.

D.      Award Plaintiff compensatory damages for the injuries and losses that she

suffered in an amount to be proven at trial;

E.      Order Defendant to pay all reasonable attorney fees, court costs, and

expenses incurred by Plaintiff as a result of Defendant's actions and inactions, as well

as pre-judgment and post-judgment interest;

F.      Order the Agency to expunge her record of negative personnel and

disciplinary information; and

G.      Order nominal damages if equitable damages are moot; and

H.      Order such other equitable and legal relief as the Court deems necessary and

appropriate.

## JURY DEMAND

The Plaintiff requests a trial by a jury of her peers as to the claim set forth in this

Complaint.


Respectfully submitted,

/s/ *Sara L. Bloom*
Sara L. Bloom, ASB 1509071
Law Office of Sara Bloom
1120 Huffman Rd, Ste 24-785
Anchorage, Alaska 99515
(907) 519-3613

13

sara@907lawyer.com

Date:
April 17, 2025

**LAURIE THORPE AFFIDAVIT**

| | |
|---|---|
| **STATE OF ALASKA** | § |
| | § |
| **COUNTY OF MATANUSKA-SUSITNA** | § |

I, **Laurie Thorpe**, make the following statement freely and voluntarily to **Marcus Nichols**, who has identified himself as an EEO Contract Investigator for the Bureau of Land Management, investigating a complaint of discrimination filed <u>on my own behalf</u>, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear and affirm:

1. **What is your name?**

   Response: Laurie Suzzanne Thorpe.

2. **What is your sex?**

   Response: Female.

3. **What is your age (month and year of birth only)?**

   Response: 59, DOB: 11/1962.

4. **Please describe the nature of the reprisal for which you are alleging as the basis of the discrimination you were subjected to. Please include the status (ongoing, settled, withdrawn, and etc.), name(s) of management official(s) involved in the activity and when it was filed.**

   Response: I have continually been subjected to retaliation for filing an EEO complaint in June 2021, which was resolved on or about June 29, 2021. I filed an additional EEO complainant in September 2021, which is still pending a final resolution. I am also consistently speaking up to management about discrimination and equal employment opportunities violations with the BLM Alaska. Since filing these complaints and speaking out, I have been continually subjected to the malicious, coercive, and corruptive BLM Alaska Leadership team working against me in retaliation.

5. **What was the name of the organizational unit to which you were assigned prior to your resignation?**

   Response: U.S. Department of Interior, Bureau of Land Management, Anchorage District Office, Anchorage, Alaska.

Page 1 of 11

Declarant's Initials

6.  **What was the address of your duty station?**

    Response: Anchorage District Office, 4700 BLM Road, Anchorage, AK.

7.  **What was your position title and grade and for what period of time did you hold this position?**

    Response: Planning and Environmental Coordinator/GS-0303-12. Since July 4, 2021, to February 28, 2022. I have been with DOI since Jan 2005; BLM since July 2007.

8.  **What was the name of your immediate supervisor(s) as of the claims at issue? Please include the title of your supervisor and include the dates of supervision.**

    Response: My first-line Supervisor at the time of my constructive discharge was Kent Slaughter, Acting Anchorage District Manager, GS-14. December 2021 to Feb 28, 2022.

9.  **What was the name of your second level supervisor(s) as of the claims at issue? Please include the title of your supervisor and include the dates of supervision.**

    Response: My second-line Supervisor at the time of my constructive discharge was Erika Reed, Acting Associate State Director Manager, GS-15.

10. **What is your understanding of the Agency's harassment policy?**

    Response: My understanding is that we are to file complaints with Christopher Dojka, BLM EEO, and he hands it to the Associate State Director, Ted Murphy or his Acting, so he/she (Murphy/Reed) is aware of the complaint and can influence the outcome. This is not necessarily how the process is written, but that is how it happens.

11. **Did you receive training in discrimination, harassment and/or a hostile work environment during your tenure with the agency? If so, when, what training did you receive, and whether you completed the training?**

    Response: I do not recall the last time I took the training, but I always stayed current with all required training, and in fact I typically exceed the minimum requirement.

12. **What is/are the name(s) of the management official(s) and position titles, you hold responsible for the incidents of disparate treatment and non-sexual harassment?**

    Response: I was subjected to disparate treatment and harassment (non-sexual), based on my age, sex and reprisal, by Ted Murphy (Advisor HQ), Tom Heinlein (Acting State Director), Erika Reed (Acting Associate State Director), Leslie Holland (Deputy State Director of Support Services), Callie Weber (Acting District Manager, Anchorage District Office), Christine Mahlen (Human Resources Officer, BLM Alaska), Marnie Graham (Glennallen Field Office Manager), and Joy Edge (BLM Alaska HR Specialist). All are key players on the BLM Alaska Leadership Team, and all are working together

Declarant's Initials

collaboratively, in a coercive and corruptive manner to make sure I fail, and to demoralize, humiliate me, and force me out.

13. **Are the management officials identified above aware of your age and sex? If yes, please state who, when and how did s/he become aware?**

Response: All of the individuals identified in this complaint are aware that I am a female and at least generally aware of my age.

14. **Do you know if the person(s) alleged to have committed the discrimination against you is/are aware of your stated reason for the alleged reprisal (Prior EEO, June 2021 July 2021 EEO Complaints and for consistently speaking up about discrimination and EEO)? If yes, who, when and how did s/he become aware.**

Response: All of the individuals identified in this complaint are aware my prior and current EEO and speaking up against the bad practices with the agency. All management involved in this complaint are aware of my prior EEO complaints. Mr. Murphy, Ms. Mahlen, Ms. Weber, Ms. Edge, and Mr. Heinlein were named in my June 2021 EEO complaint, and they were all named in the September 2021 complaint.

15. **When were you constructively discharged?**

Response: Due to management's hostile and intolerable work environment, I was involuntarily forced into an early, unplanned, and unprepared for retirement on February 28, 2022, which abruptly ended my 37years of federal service.

16. **What is the nature of the personnel action identified on the SF-50 and SF-52 for your departure (resignation, retirement, etc.)?**

Response: I have not seen what was put on the SF-50 and SF-52, but my reason for leaving was a forced retirement. I have not received a final SF-50 or SF-52.

17. **Please detail the below incident of alleged disparate treatment, harassment and reprisal, to include the name(s) of the management official(s) and/or employee(s) responsible for the action(s), and his/her involvement.**

*"Effective February 28, 2022, Complainant retired from the BLM because of the extensive toll the discriminatory and harassing work environment has taken. (Constructive Discharge)"*

**Date:** February 28, 2022.
**Incident:** I was not planning on retiring this soon. I was going to consider retirement at the end of the year I turn age 62 (December, 2024), depending on how much career development I achieved and how my financial status looked at that time.

Declarant's Initials

As a result of BLM AK management's all-out attack against me, on February 7, 2022, I submitted paperwork to make February 28, 2022, my last day of employment with BLM Alaska. The working relationship with the BLM Alaska Leadership Team had deteriorated beyond repair, and my health from the stress has deteriorated to the point that I had to make a choice to either stay in the toxic and demoralizing work environment, becoming even more sick, or get out to take care of my health and wellness. I decided to take the advice from my doctor, counselor/therapist, friends and family to leave before it kills me.

18. **Please detail the "discriminatory and harassing work environment" you allege that resulted in you tendering your resignation from the agency, to include names of those involved and/or subjecting you to an 'inquisition.'**

Response: This was an all-out attack to get rid of me anyway possible and management continually wore me down. I have been ground down by BLM AK to the point that my health has deteriorated so much that I can no longer bear it. The demoralization, being "thrown under the bus" by many upper-level managers in BLM Alaska, and the horrible coercive corruption in BLM AK Leadership has made me so sick I can no longer take it.

I was discriminated against by Ms. Webber and Ms. Mahlen, when I was not given the equal employment opportunity to apply and compete for the GS-13, Associate District Manager detail in Alaska. Instead of asking for interest, a personal friend of Ms. Webber, Ms. Hueckman, was non-competitively placed into the opportunity. When management was in the process of onboarding Ms. Hueckman into the Associate District Manager position, I was intentionally copied on an email that I had no business being on. This was done just to flaunt the fact that they knew I was seeking opportunities and that they had deliberately given the opportunity to someone else, a good friend of Ms. Webber.

I was not recognized on any of the BLM Alaska Organization charts. This was another continued insult to me and an effort by BLM Alaska to demoralize me and force me into quitting or early retirement.

Leslie Holland, Deputy State Director for Support Service) delayed processing of a STAR award for my excellent work during my supervisory detail in Support Services from December 2020 through April 2021. The STAR award was not processed until the exact same day as Ms. Holland was interviewed for this complaint, 10 months after my excellent performance period.

I was notified on January 12, 2022, that my application was disqualified for the position I had done for five years under Serena Sweet, because my application lacked the 40 hours per week requirement for prior experience, when management knew that I had successfully performed in the position for five years, with performance reviews of 4's and 5's out of possible high 5.

On December 7, 2021, I received an email from Ms. Trudy Hawkins, copying my supervisor, Ms. Weber, along with many, many other managers throughout BLM Alaska, indicating I had not completed the Annual Ethics Training (AET) requirement by October

Declarant's Initials 

31, 2021, and had until December 31, 2021, to complete the training. The fact is I had completed the required AET on October 18, 2021, and the widespread email alleging I had not was done to demoralize and publicly humiliate me, reducing my chance of getting a job working for anyone else in BLM Alaska.

On August 20, 2021, I emailed HR and requested my name be changed and provided the legal documentation for the name change. On December 21, 2021, four months later, I tried to access my eOPF file and I found that my name had not been changed in the system. Five months later and BLM Alaska Human Resources Office has still not made the change in my official personnel file with the Office of Personnel Management (OPM) where my official personnel file is maintained. I am continually running across places that my name has not been updated in the employment systems and records, this a continuing problem. Just when I think it is finally done, I find the same the deficiency someplace else. The BLM Alaska Human Resources team, in the Support Services Branch of BLM Alaska, should be handling this name change in the employment systems after I submitted the legal documentation for the name change. This is just another example of BLM AK HR working together to continually cause me problems, humiliation, and demoralization, in retaliation to the previous EEO case that I filed.

BLM Alaska Human Resources Department (BLM HR) has meddled with my Employee Express account intentionally to prohibit me from accessing this important section regarding my employment history, to purposefully cause me stress and problems with my pay, benefits, and history of Personnel Actions. I have not gone to anyone in management about this issue due to the ongoing harassment and retaliation from my previous EEO complaint. I do not know who to go to or who I can trust. I feel like the only option that I have, is to go through EEO.

I have over 37 years of federal service and I have not received recognition for my milestones. It all stems from the HR office and Ms. Mahlen as the HR Officer in charge today, under the direction of Ms. Holland, Ms. Reed, and ultimately Mr. Heinlein. They are recognizing many other BLM Alaska employees for their length in service milestones, but not me. I believe that this is a chronic behavior from BLM AK Human Resources department neglecting to recognize my federal service milestones as a way of "getting back at me" from my ongoing EEO complaint as well as an EEO sexual harassment complaint I filed about 8 years ago, and BLM AK did nothing of substance to address it.

January 6, 2022. During a periodic Glennallen Field Office (GFO) NEPA Interdisciplinary Team meeting, when it was my turn to speak and share updates on the project that I was helping lead for the GFO team, the meeting facilitator, Ms. Graham, interrupted me several times and would not let me finish sentences so I could convey project status to the team, and what the current needs are from the team. Furthermore, I had asked Ms. Graham to be transparent with the GFO team, specifically that she empowered me with discretion to edit the project document (an Environmental Analysis, or EA) as necessary to get it completed and ready for her signature. Ms. Graham never shared with the GFO team, despite my specifically worded requests, the fact that she empowered me to edit the document as needed. This consequently caused dysfunction with the GFO team, alienating

Page 5 of 11

Declarant's Initials 

me against them. I believe Ms. Graham did this purposefully to thwart any success I could make.

I proved Mr. Heinlein (Anchorage District Manager) wrong in his actions against me, in my EEO case that was settled last summer. Mr. Heinlein was subsequently promoted to Acting State Director. Since then, he has been coercive in directing all of the BLM AK Leadership Team to work against me, thwart my success, and demoralize me. If staff doesn't carry out his mission to get rid of me, they know they will experience adversity as he is the number 1 in BLM Alaska, a very powerful position. And, since Ms. Reed is filling in behind Mr. Murphy (whom I had filed a hostility complaint against in 2020), and is very close friends with Mr. Murphy, she is carrying out both Mr. Heinlein's and Mr. Murphy's quest to get rid of me – all because I proved them wrong with their actions against me. While the hostility complaint against Mr. Murphy was dismissed nearly a year after filing it, the fact that Mr. Murphy got reassigned to work in HQ, and still is, speaks volumes. It should be noted that 2 other BLM Alaska women also filed hostility complaints against Mr. Murphy for similar reasons that I did.

I graduated from the Emerging Leaders Program (ELP) in 2021, and just like other graduates anticipating career growth, I tried hard to match my skills and extensive natural resource management and planning experience with jobs that were a good fit for me and the agency. I really wanted to grow in the 930 program (which includes natural resource management and planning) at the BLM AK State Office.

Despite qualifying and interviewing for a GS-13 Vegetation Program Lead detail assignment in the BLM AK State Office, my application was oddly deemed not qualified for the permanent full time GS-13 Vegetation Program Lead vacancy. That position is the target position I strived for many, many years to achieve and many peers thought I was a great fit for it and encouraged me to apply. I shared my goal as such with Mr. Murphy (see previous EEO complaint from June 2021, September 2021). My colleagues in the State Office always told me I had to talk with Mr. Murphy as he was the 'gate keeper' for all jobs and it was up to him as to who gets what job in the BLM AK State Office. But as explained in my subsequent PB 18-01 Hostility Complaint against Mr. Murphy, he had no interest in helping me grow into that work unit. In fact, he worked against me for any of my interests in the State Office. In fact, he would not let Serena Sweet fill any of the GS-12 Planner vacancies on her Planning team either, as he knew I was interested and skilled in that arena as well.

Further exasperating the situation, when I was looking for any job that matched my skills and interests in the BLM AK State Office, Mr. Murphy would not let Lesli Ellis-Wouters (Office of Communications lead) fill any of her GS-11 or GS-12 vacancies – details or permanent full time - in the Communications department at the State Office, despite her efforts to try to get me on board there as well. Ms. Ellis-Wouters knows me well and appreciates my diverse skills as she and her staff worked closely with me on high profile planning projects for 5 years when I was GS-12 Planner working for Ms. Serena Sweet, Planning Section Lead.

Page 6 of 11

Declarant's Initials

After I let my supervisor, Kent Slaughter, know of my need to retire, and word got to Ms. Mahlen head of Human Resources department for BLM Alaska, she provided no support to my repeated requests for assistance in accessing the Employee Express site with username and password. I did not ask her to access the system for me, I simply asked her for help to find a solution for me so I could get access to Employee express with my username and password I had previously set up. I told her that I had no luck with multiple submittals for this assistance through the helpdesk request venue on the Employee Express site. Ms. Mahlen's cold and unhelpful response was: "I'm sorry, we can only submit a ticket for our own account. We do not have a phone number for you to call." Such a cold and disrespectful response to me asking for help from someone (her) in the "Support Services Branch" of BLM Alaska, the Human Resources Officer. It is blatantly clear that Ms. Mahlen simply did not want to help me at all, with anything, in her collaborative efforts with the BLM AK Leadership to demoralize me into nothingness. This is just another example of the retaliation and demoralization leading to my constructive discharge.

**19. Were your coworkers subjected to these same conditions [identify by name, position title and supervisor]? Explain your answer; be specific.**

Response: I have no idea what my former co-workers have gone through. I know they see what speaking up against BLM-Alaska Leadership has done to me, how it has wrecked my career, and how I am labelled a troublemaker by leadership. They know that speaking up will put them in the same situation, and they will suffer adverse consequences for speaking up about EEO and against hostility in the workplace. I can't even get many of my trusted co-workers/peers to speak up in support of me because they know they will suffer adverse consequences if they do. This clearly demonstrates the extensive coercion and ongoing corruption of the BLM AK Leadership, under the direction of Mr. Heinlein, who I proved wrong with his actions against me in my June 2021 EEO complaint.

**20. Is it your claim that you were treated differently from others regarding this claim?**

Response: Yes. I was treated differently by multiple members of management starting with Ted Murphy, Tom Heinlein, Erika Reed, Leslie Holland, Callie Weber, Christine Mahlen, and Joy Edge.

An example would be (in addition to examples discussed above), while on a group (Teams platform) meeting with the Glennallen Field Office interdisciplinary team, I would try to provide a status update to the group and Ms. Graham would not let me speak by interrupting me. I told her (in an email, not during the call because I didn't want to awkwardly put her on the spot during the call/meeting) that it was disrespectful and hurtful to me that she interrupted me so much on the call, and her response was that she "can't remember what she said to me and what she said to the team". This is Ms. Graham's easy way of avoiding the truth of the matter (a recurring behavior of hers). Furthermore, Ms. Graham had empowered me to edit the document (environmental assessment or EA) but refused, despite my multiple requests, to tell the interdisciplinary team about that empowerment she gave me, which set me up to be the enemy of the entire team as I moved the document forward

Page 7 of 11

Declarant's Initials 

with my edits necessary to keep us out of litigation. (That was my role as Planner and project coordinator to bring the EA up to par and keep us out of litigation). Ms. Graham effectively thwarted my success with the project and set me up for failure with the entire Glennallen interdisciplinary team.

**21. When you say that you were treated differently, who are you comparing yourself to and how is it that you were treated differently?**

Response: All of my co-workers, team members and anyone falling under the umbrella of this corrupt BLM-AK Leadership group. Nobody dares speak up about EEO or against hostility in the workplace with this BLM-AK Leadership group as they see the adverse consequences I have experienced, the career destruction, and ultimately constructive discharge/forced early retirement.

**22. Did you discuss with management officials that you believed you were being treated differently? If yes, with whom, when, and please describe the conversations(s).**

Response: I have brought up these issues to management all along the way, however, for this issue, I informed my supervisor, Mr. Slaughter, and went to EEO, Ms. Angela James.

**23. What was management's response to your concerns of being treated differently?**

Response: Mr. Slaughter understood the stress and humility of it all, and he praised me for the work that I had done over the years. He tried to make me feel better about my career and accomplishments and did his best to make the retirement process as easy as possible on me.

**24. Did you report the alleged harassment? If so, to whom, when, and to your knowledge, what action was taken on your report?**

Response: For many of my issues I discussed them with supervisors and peers whom I trusted. I have not gone to anyone else in management due to the ongoing harassment and retaliation. I feel like the only option that I had at this point was to retire against my will and then go through EEO.

**25. If you reported the harassment, did the harassment stop?**

Response: When I did report the harassment and it never stopped while I was there, and it still continues now that I have retired. I still have Employee Express issues and I am concerned that they are going to mess with my retirement benefits.

**26. If you did not inform a management official(s) that you believed you were being subjected to harassment, please explain why you did not inform management official(s)?**

Declarant's Initials 

Response: I went to management for every single instance of harassment along the way, and every time my concerns were ignored. The harassment and disparate treatment continued to become so bad that I no longer had a voice because each complaint would make things worse, so EEO became my only option. When I told Mr. Slaughter I was retiring because of the harassment and demoralization, and the hopelessness I was feeling, he said he was sorry to hear and was sorry about my situation. Mr. Slaughter understood the stress and humility of it all, and he praised me for the work that I had done. He tried to make me feel better about my career and accomplishments and did his best to make the process as easy as possible on me. Mr. Slaughter even allowed me to return my government issued property to a BLM employee who lives closer to me in my community so I would not have to drive all the way into Anchorage (over and hour drive one way on a dangerous highway during the snowy winter months). The only other person I spoke with was Grant Lewis because he is the go-to for the retirement process. I mentioned to Mr. Lewis that I was retiring because I couldn't take the harassment and demoralization anymore. He did not respond to my comments of why I was submitting for retirement, but I would not have expected him to as he is a retirement process manager working out of the National Operations Center in Denver, and not in the chain of command with the BLM AK Leadership.

## 27. What effect did the alleged harassment have on your physical or emotional well-being?

Response: As a result of the harassment that I have experienced from management, my mental, emotional, and physical health has deteriorated. I get stress migraine headaches, anxiety attacks, and consequently I used lots of sick leave and vacation time for these issues. I continue to need multiple doctor appointments with my medical doctor and emotional counselor. They both have advised me that I need to get this stress out of my life, or it may likely lead to further health ailments including but not limited to cancer. I have realized many more stress-related health deterioration symptoms and conditions of personal nature that would be improper to discuss here. I used to be very active – working out 3-4 times a week and going on hiking, skiing, biking, and backpack camping expeditions every weekend. I have not been able to do any of these activities due to depression and deteriorated health.

I feel like I'm not as focused, my mind is overloaded with despair and feeling so disrespected. I feel I can't trust hardly anyone with BLM Alaska. I took more time off this past year compared to anyother time in my career, which got me behind on all assigned work tasks. My morale is so low it has led to clinical depression. I believe the working relationship with BLM Alaska has been damaged beyond repair. I am addressing this all with my medical doctor and my counselor.

## 28. What effect did the alleged harassment have on your work performance?

Response: It has been painfully emotional, demoralizing, depressing and humiliating. I was not able to focus on my job. Mr. Slaughter offered to put something together for a retirement celebration, and I had to tell him no because I was too humiliated by what I had

Declarant's Initials 

been put through and I just needed out. I feel cheated out of a respectful retirement and celebration of my career accomplishments with peers. I am a lifetime federal employee, and I was forced to end my career abruptly and under horrible conditions. Instead, I have this huge dark cloud of EEO hanging over every aspect of my life. Had I stayed with BLM-Alaska, my performance evaluations would have become worse, which would have jeopardized any career development opportunities. The fact that I inadvertently omitted the required "40 hours per week" language from my most recent resume is an example of how distraught I am. All of this has occurred because I am not afraid to speak up about EEO and against hostility in the workplace.

**29. Why do you believe that your age, sex, and reprisal were factors in this claim?**

Response: I do not really know what to say, about my age and sex because the situation is all so connected to the fact that I am not afraid to speak up against the BLM-AK Leadership practices of continually violating equal employment opportunities. When I filed EEO cases in June 2021 and September 2021, Leadership intentionally started retaliating against me by creating an environment that purposefully prevented me from developing my career in Anchorage. Management has happily supported providing me with opportunities for positions away from my interests and skills with the BLM Alaska workforce; however, they knew I did not want to leave BLM Alaska and purposefully prevented me from career development opportunities relevant to my education and experience in Anchorage.

I believe my age factors in because management knew I was at an age eligible for retirement, and by continuing to work closely together to design a humiliating and demoralizing environment, they could force me into resignation or retirement. I believe my gender could be a factor, because if I were a male, management would possibly not have tried to emotionally squash me as they did, and they would not think that they could so easily get away with the intimidation they have subjected me to.

**30. Is there anyone else who may have direct/firsthand information to share with me that would be relevant to the allegations made in your formal complaint? If so, who and what is the nature of his/her knowledge?**

Response: The following witness can testify to the treatment I have received from BLM Alaska Leadership and/or vouch for the fact I had no intentions to retire this early.
- Kent Slaughter – We spoke directly about my forced retirement.
- Paul Krabacher – pkrabach@blm.gov 907-271-5681
- Douglas Ballou – dballou@blm.gov 907-267-1206
- Lesli Ellis-Wouters – lellis@blm.gov 907-271-4418
- Rob Brumbaugh – rbrumbaugh@blm.gov 907-271-4429

**31. Are there any notes, reports, or other documentation related to the actions in your claims? If yes, please provide a copy of same appropriately labeled/identified.**

Response:

Page 10 of 11

Declarant's Initials 

- Please request my performance evaluations and any associated performance awards with BLM Alaska since I began employment with the agency in July 2007.

- Please request my leave usage and balances over the last several years. Going back three years should show a significant increase in requested time off. I have provided doctors notes relevant to the effects of the toxic work environment on my well-being and overall health.

- My PB 18-01 Hostility Complaint and Agency Response against Mr. Ted Murphy.

- My previous EEO complaint filed in June 2021, and the settlement agreement demonstrating that the agency was wrong in their actions against me (specifically Mr. Heinlein and the associated staff in the BLM AK Leadership Team) and that they owed me compensation.

- My September 2021 EEO complaint that is still in progress as of the signature date on this declaration.

32. **What remedy are you seeking?**

Response: TBD.

33. **Is there anything you wish to add to your statement?**

Response: Look at the pattern of behavior with the persons mentioned in this complaint, the facts presented here within, and supported in the additional documentation provided.

I am deeply concerned that BLM AK Leadership and Human Resources department will do whatever they can to mess up my retirement benefits, annuity payments, and anything else they can, as they have been malicious to me for years and are part of the coercive, corruptive team working against me in retaliation, primarily due me speaking up about EEO and against hostility in the workplace, and the fact that I proved Mr. Heinlein (now the Acting State Director) wrong in my EEO complaint last summer. All under his chain of command will do whatever they can to protect him, otherwise they will experience adverse consequences like I have.

**I have reviewed this statement, which consists of 11 pages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.**

X _Laurie S. Thorpe_          Date: _3/28/2022_

Page 11 of 11

Declarant's Initials

## LAURIE THORPE REBUTTAL AFFIDAVIT - BLM-21-0352(MIXED)

STATE OF ALASKA        §
                                      §
COUNTY OF MATANUSKA-SUSITNA §

I, **Laurie Thorpe**, make the following statement freely and voluntarily to **Marcus Nichols**, who has identified himself as an EEO Contract Investigator for the Bureau of Land Management, investigating a complaint of discrimination filed on my own behalf, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear and affirm:

1. You have been provided with the Declaration of **Ted Murphy** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:

**Item 2:** Mr. Murphy, formerly Associate State Director BLM AK, was involuntarily reassigned to work outside of BLM Alaska on August 3, 2021, due to multiple PB 18-01 Hostility complaints against him. I was one of three women who filed complaints about his unacceptable behavior in the workplace. While my complaint was filed on August 18, 2021, approximately 2 weeks after Mr. Murphy's reassignment, two other PB 18-01 Hostility complaints were filed against Mr. Murphy prior to mine. I was not aware of these other complaints against Mr. Murphy until October 2021. This discussion is relevant due the cumulative effects of Mr. Murphy's hostile actions and his influence over BLM AK Leadership team.

**Item 7:** Mr. Murphy is simply not telling the truth, in his "No" response. In fact, as stated in Item 2 above, Mr. Murphy is the individual named in my PB 18-01 hostility complaint filed against him in on August 18, 2021, that ultimately contributed to his reassignment outside of BLM AK (see supporting documentation). The fact remains, Mr. Murphy indeed does have prior EEO activity involving Complainant (me).

**Item 10:** Mr. Murphy is not telling the truth; he is aware of my age. Prior to Mr. Murphy's reassignment to Advisor AD-300, his role with BLM AK involved oversight of staffing assignments specifically in the AK State Office. Prior to his directed reassignment, when I spoke with Mr. Murphy at least twice about employment opportunities within the BLM AK SO, specifically my interest in specific positions in the AK State Office, I told him my age and how at this point in my career, my goals, experience, and skills matched the needs and opportunities with specific positions in the BLM AK State Office. Mr. Murphy did everything he could to prevent me from pursuing my career interests with BLM Alaska State Office. He used his

Page 1 of 9

Declarant's Initials 

powerful position over BLM AK Human Resources staff as the "gate keeper", and consequently thwarted all potential opportunities of my interest with the BLM AK State Office.

**Item 11:** Mr. Murphy is not telling the truth and is speaking double-talk. He claims he is "not aware of Complainant speaking up about discrimination and EEO", and yet also he claims "I was aware of her June 2021 EEO complaint". In fact, Mr. Murphy (prior to his reassignment to Advisor AD-300) oversaw the EEO program via his chain of command with BLM AK. In fact, all EEO complaints, after being submitted to the EEO specialist, are handed over to Mr. Murphy for consideration. The EEO specialist reports directly to the Associate State Director (Mr. Murphy's position of record at the BLM AK State Office). The EEO specialist's performance evaluation depends on how well they manage the program in accordance with Mr. Murphy's likings. When I submitted my first EEO complaint with BLM AK in (or about) 2013, the outcome was influenced directly by Mr. Murphy. Consequently, the outcome was nothing of substance and the complaint was swept under the rug. Mr. Murphy knows very well about that complaint, not only have I shared my disappointment with him about it, he protected the individual it was against, with no significant consequences or reprimand. This historic EEO complaint is mentioned in my August 18, 2021, PB 18-01 Hostility complaint against Mr. Murphy.

Mr. Murphy, is in fact aware of my June 11, 2021, EEO complaint regarding me speaking up about discrimination and EEO. Mr. Murphy is named in the June 11, 2021, complaint. ASD = Associate State Director, Mr. Murphy's position at the time. Mr. Murphy, even when interviewed for these complaints refers to me as "a chronic complainer" as I do dare speak up about EEO and against hostility in the workplace. It takes tremendous courage to speak up about these issues and ill-minded actions of management. Someone must speak up for awareness and change; otherwise, EEO violations and hostility in the workplace will continue and become the accepted culture with no adverse consequences for the violators. Unfortunately it already has become the accepted culture in BLM AK.

**Item 12:** Mr. Murphy neglects to acknowledge the fact that EEO complaints, and PB 18-01 complaints, after submitted to the EEO specialist, are handed directly to him (Mr. Murphy, Associate State Director at the time) for consideration. For validation of this, please ask Lesli Ellis-Wouters, as she personally witnessed the EEO specialist handing her PB 18-01 complaint directly to Mr. Murphy in 2021. Lesli Ellis-Wouters is the Communications Director for the BLM AK State Office. Lesli was one of three women who filed hostility complaints against Mr. Murphy in 2021. Lesli can be reached at: lellis@blm.gov 907-271-4418, 907-331-8763

Furthermore, contrary to Mr. Murphy claiming that "allegations are immediately addressed", it took over 6 months to get response to the PB 18-01 hostility complaints that the three women in the AK State Office filed against Mr. Murphy. 6 months duration is indeed not "immediately addressed".

**Item 13:** Mr. Murphy, while he is not currently assigned to BLM Alaska, is one of many coercive collaborators with the BLM AK Leadership Team working against my career development and consequently the forced retirement. His ill-minded actions over the past several years, mishandling EEO complaints, and his awkwardly close working relationship with

Declarant's Initials 

Ms. Erika Reed (now serving in his former position as Acting Associate State Director for BLM AK) has contributed significantly to the destruction of my career with BLM AK, and the forced early retirement. Mr. Murphy did, in fact, subject me to disparate treatment and harassment.

2. You have been provided with the Declaration of **Thomas Heinlein** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:
**Item 2:** Mr. Heinlein used to be the Anchorage District Manager. I proved Mr. Heinlein wrong in a previous EEO complaint that was settled June 29, 2021. About 5 weeks later (August 6, 2021), Mr. Heinlein got promoted to Acting State Director. Mr. Heinlein is now in a very powerful position and directs the entire BLM AK Leadership team.

**Item 3:** Mr. Mike Nedd is also aware of my concern for how EEO and hostility in the workplace is handled. Not only did I ask Mr. Nedd an EEO question during our Emerging Leaders Class discussion with BLM Leadership, I also cc'd him on an email regarding my dissatisfaction with the PB 18-01 process. (See documentation provided.)

**Item 4:** Ms. Tracy Stone-Manning is also aware of my concern for how EEO and hostility in the workplace is handled. I cc'd Ms. Stone-Manning on an email regarding my dissatisfaction with the PB 18-01 process. (See documentation provided.) Thus, I believe the entire chain of command over Mr. Heinlein will do everything they can to protect him in his role as Acting State Director for BLM AK, as well as the staff that reports to Mr. Heinlein. All because I am willing to speak up. I never received any follow-up from Mr. Mike Nedd nor Ms. Tracy Stone-Manning. I am terrified and appalled by this high-level coercive administration.

**Item 7:** Mr. Heinlein is in fact not telling the truth. Mr. Heinlein was named in my 20210621 EEO complaint. (See complaint 20210621 and settlement documentation 20210629 provided.) Mr. Heinlein is also named in an ongoing retaliation EEO complaint filed February 10, 2021. Mr. Heinlein signed an affidavit November 18, 2021 for the ongoing EEO complaint of retaliation. The fact that he is denying prior EEO activity speaks volumes about his integrity.

**Item 11:** Mr. Heinlein attempts to dodge his involvement with reprisal against me by referring to the PB 18-01 complaint I had against Mr. Murphy in spring 2021. The PB 18-01 Hostility case against Mr. Murphy in fact did not involve Mr. Heinlein nor did it result in my "return to Anchorage District as a planner". My assignment to GS-12 Planner at the Anchorage District was a negotiated settlement as the result of Mr. Heinlein's adverse actions against me, as described in the 20210621 EEO complaint. Mr. Heinlein fails to acknowledge our 2021 spring/summer discussions about the EEO violations and discrimination involving the fact that he refused to allow me back into my GS-11 Natural Resources Specialist position or the equivalent, even though I had a written agreement which was used as factual evidence in that 20210621 EEO case. Mr. Heinlein further attempts to dodge his knowledge and involvement of

my speaking up about discrimination and EEO violations, by referring to a conversation about "a previous District Manager who retired nearly 3 years ago".

**Item 13:** In Mr. Heinlein's powerful position as Acting State Director for BLM Alaska now, he is ultimately responsible for the disparate treatment and harassment against me that led to the horrible demoralization, thwarting of career progress/success with BLM Alaska, and ultimately my forced early retirement. All other staff named in this EEO complaint are under his direction/authority and have to carry out his goal to get rid of me, otherwise they will suffer adverse consequences.

**Item 14:** Of course, Mr. Heinlein will not acknowledge disparate treatment and harassment, it would not look favorable for him in his powerful position otherwise.

**Item 17:** Mr. Heinlein admits he is aware of my unhappiness, but he made no attempt to reach out to me in discussion or otherwise to understand things from my perspective. Any reasonable person in such a powerful leadership position would take logical and sensitive action to reach out to any employee expressing such unhappiness. Particularly an employee with an excellent performance record for more than 37 years of federal employment, who had just completed the Emerging Leader Program and wished to excel in her areas of skill and experience. Mr. Heinlein instead covertly directed and supported his BLM AK Leadership team members in their continual and collaborative efforts to demoralize me into nothingness, leading to depression, ill-health, and ultimately constructive discharge. All because I proved him wrong in the 20210621 EEO complaint, and because I speak up for EEO and against hostility in the workplace.

**Item 18:** Mr. Heinlein refuses to acknowledge the fact that he denied me "return to my former GS-11 Natural Resources Specialist position or the equivalent" at the Anchorage Field Office (see 20210621 EEO complaint and supporting documentation). Mr. Heinlein refuses to acknowledge the outcome/settlement of my EEO case was in fact the result of his ill-intended, coercive actions against me. He claims he "cannot think of any action [he] could have undertaken that would have been overturned and thus prove [him] wrong", but he is simply refusing to acknowledge the facts. These facts were presented in my 20210621 EEO complaint, and the resulting outcome of my assignment to GS-12 Planner at the District proves he was wrong. That EEO case outcome was not related to the PB 18-01 complaint against Mr. Murphy, contrary to Mr. Heinlein's statement.

**Item 20:** Mr. Heinlein's response to this item is an incorrect and rhetorical discussion of my 20210621 EEO case and the outcome. Please review that complaint and the settlement documentation to demonstrate how I proved his actions against me were in violation of EEO and demonstrated a hostile working environment under Mr. Heinlein's direction. Mr. Heinlein, like others named in my complaints, has worked to thwart my success because I am not afraid to speak up about EEO and against hostility in the workplace and I proved him wrong. His actions against me and the fact that he was promoted to State Director after being proven

**Item 21:** Since the settlement of my 20210621 EEO case, and the fact that I proved Mr. Heinlein wrong - the outcome revealed that I indeed did not have to redo my resume to qualify for a GS-11 Fire/Fuels position, that I was guaranteed a GS-11 position after my 5-year

Declarant's Initials

temporary promotion to GS-12 in the AK State Office. I was consequently awarded a GS-12 position due to the EEO violation – and Mr. Heinlein has been promoted to Acting State Director. The fact remains that Mr. Heinlein violated EEO and I had to file a complaint against him and others that were part of the coercive and collaborative effort against me. Mr. Heinlein was promoted to BLM AK State Director and now is in the ultimate strategic position to further ruin my career and get rid of me in retaliation from my EEO complaint against him. Mr. Heinlein and the Leadership Team under his direction have successfully thwarted my success through coercive and covert work each other, carrying out actions to demoralize me, thwart my success, and ultimately subdue me into clinical depression. The working relationship with this Leadership Team is damaged beyond repair, and they have ruined me and my career. This led to the consequential constructive discharge/forced early retirement. All because I speak up about EEO and against hostility in the workplace.

Not once did Mr. Heinlein reach out to me to address my concerns.

3. You have been provided with the Declaration of **Marnie Graham** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:
**Item 3:** It is clear the chain of command (and ultimate direction) over Marnie Graham has been Mr. Tom Heinlein, in his role as District Manager, and now as State Director. While Mr. Kent Slaughter is currently Acting District Manager, he answers to Mr. Heinlein as well.

**Item 7:** Ms. Graham denies prior EEO activity involving me, however, in fact she is named in my previous EEO complaint and responded with an affidavit she signed on November 12, 2021.

**Item 11:** Ms. Graham has the facts wrong. I was not moved from Anchorage Field Office to the State Office as a Planner. Ms. Graham continues to use her catch-all excuse of "I just don't remember" …. "I do not recall" to deny any responsibility for the situation.

**Item 18:** The facts of the January 6, 2022, GFO IDT meeting, and my subsequent request that Ms. Graham clarify to the GFO IDT Team my role and the empowerment she gave me to edit the environmental analysis (EA) document as needed to get it done, are explained in detail in my DOI-BLM-21-0352 EEO complaint which I submitted last fall (Notice of Acceptance signed October 12, 2021, by LaShon D. Cole). Due to ongoing retaliation, the EEO complaint was further amended with additional information and documentation.

Ms. Graham completely mischaracterizes our communications. Ms. Graham refused to answer my calls during normal business hours and would only call me outside of normal business hours, which is very unprofessional. Ms. Graham in fact never did explain to the GFO team the extent of document editing she empowered me with to get the EA completed, thus turning the entire team against me when I attempted to make edits for consistency and legal adequacy in the EA.

Declarant's Initials 

Ms. Graham merely spoke in generalities and thanked the whole team for all the hard work on the project. She did not empower me with merely "final edits" to the document, but in fact otherwise she empowered me with much more editing and corrections to the EA, which were necessarily significant in quantity and quality to pass NEPA adequacy and legal muster. The level of work needed on the EA was far more than "final edits". I couldn't even stay on long enough (before being demoralized and subdued to the point of forced retirement) to see the project through to finish - Ms. Graham successfully thwarted my success with that achievement.

4.  You have been provided with the Declaration of **Joy Edge** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:

**Items 3 & 4:** One can see the clear chain of command here with Ms. Edge reporting to Ms. Mahlen and Ms. Holland, both also named in this and previous EEO complaints. Furthermore, Ms. Holland reports to Ms. Reed and Mr. Heinlein, both also named in my complaint. Ms. Edge must speak the same messaging as they do, otherwise she too will suffer adverse consequences. This demonstrates the collaborative, coercive chain of command in BLM AK.

**Item 7:** Ms. Edge is not telling the truth. In fact, Ms. Edge does indeed have prior EEO activity involving me. See previous EEO complaint and affidavit signed by Ms. Edge (affidavit signed November 16, 2021). Ms. Edge was also named in my June 2021 EEO complaint; however, I do not have a copy of her affidavit for that case.

**Item 8:** Ms. Edge, while not physically located in Alaska, is a BLM Alaska employee. Ms. Edge, contrary to her statement, has in fact interacted with me in the past couple years. I worked closely with Ms. Edge during my 4-month informal detail as Supervisory Information Specialist (December 2021 – April 2022) as I worked to fill 2 permanent full-time positions in my supervisory chain of command at that time. Furthermore, Ms. Edge was integral with discussion with me and others when I questioned why I qualified for, and interviewed for, the GS-13 Vegetation Program Lead Detail position in the AK State Office, but I didn't qualify for that same job as a permanent full-time position. (See previous EEO complaint settled June 29, 2021.)

**Item 9:** Ms. Edge is fully aware of my age, as she has rated several of my job applications in the past, and has been part of previous EEO cases involving me.

**Item 11:** Ms. Edge acknowledges she is aware of my stated reason for reprisal but fails to reveal when and by whom she was made aware of it. This demonstrates how she protects her chain of command (Ms. Mahlen, Ms. Holland, Ms. Reed, and ultimately Mr. Heinlein) in fear of reprisal herself.

Page 6 of 9

Declarant's Initials 

5. You have been provided with the Declaration of **Callie Webber** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:
No Declaration received from Callie Webber for this forced retirement/constructive discharge case. Affidavit signed by Callie Webber November 17, 2021, demonstrates previous EEO involvement with me.

6. You have been provided with the Declaration of **Erika Reed** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:
No Declaration received from Erika Reed. Affidavit signed by Ms. Reed November 19, 2021, demonstrates previous EEO involvement with me.

7. You have been provided with the Declaration of **Christine Mahlen** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:
**Items 3 & 4:** Ms. Mahlen is in the chain of command under Ms. Holland, Ms. Reed (Mr. Murphy), and Mr. Heinlein. She has to protect their interests, or she too will suffer adverse consequences. This demonstrates the collaborative, coercive chain of command working together to get rid of me.

**Item 7:** Ms. Mahlen is not telling the truth. Ms. Mahlen in fact does have prior EEO activity with me. Ms. Mahlen was named in my EEO case settled June 29, 2021, as well as the ongoing EEO case of retaliation filed last fall. Ms. Mahlen provided affidavit signed November 15, 2021 for the EEI case of retaliation. I do not have an affidavit from Ms. Mahlen for the June 29, 2021, settled case.

**Item 10:** Ms. Mahlen is fully aware of my age due to her involvement with previous EEO complaints and she has full access to my personnel records as Human Resources Officer for BLM Alaska.

Page 7 of 9

Declarant's Initials 

**Item 11:** Ms. Mahlen is simply not telling the truth. She was in fact named in my previous EEO complaint. See Ms. Mahlen's affidavit signed November 15, 2021. Furthermore, Ms. Mahlen conveniently neglects to acknowledge when and by whom she was made aware of my complaint of reprisal. This is another blatant example of how the BLM Alaska Leadership team covers for each other. If Ms. Mahlen were to give out more information it could be used to help my case, and that would jeopardize her relationship with Ms. Holland, Ms. Reed, and Mr. Heinlein, leading to poor performance evaluation or worse adverse actions against her.

**Item 15:** Ms. Mahlen is not telling the truth. Ms. Mahlen, and her staff in the BLM AK Human Resources department, in fact have access to my eOPF files until the retirement case is shifted to BLM HQ in Denver. Ms. Mahlen also could have helped me find a solution to the problems I was experiencing with access to the Employee Express system when I repeatedly asked her for help, but she refused to provide me any assistance. This demonstrates how she teamed up with her supervisory chain of command to demoralize me, shut me out, leading to depression and ultimately constructive discharge.

**Item 17:** I never received a final SF-50 stating it was voluntary. I could otherwise have been able to see the most recent SF-50 in my case, but since Ms. Mahlen refused to assist me with access to Employee Express, I could not access that form. I believe Ms. Mahlen, or someone in her Human Resource department, meddled with my Employee Express account user name/password. This is possibly a result of the BLM AK Human Resources staff's failure to properly process my name change request in the systems (see previous EEO complaint describing this detail) on purpose so that I could not see what the SF-50 had for a reason. While I made the choice to retire in order to save my health and wellness, based on recommendations from my Doctor, Counselor, friends and family, it was not my intention to have to retire this soon. As a recent graduate of the Emerging Leader program (May 2021), I wanted to grow my career with BLM Alaska. As a matter of fact, everyone – friends, family, many co-workers/peers, were surprised to hear the news of my departure. When I spoke with Mr. Kent Slaughter (supervisor at the time) about my decision to retire, I told him it was because of the horrible and abusive situation with the BLM AK Leadership team and how they were all working together to get rid of me. Ms. Mahlen knows much more about this than she is willing to share. She is forced to be silent on the facts due to the coercive chain of command with BLM Alaska. I still, to this day, have not been provided a copy of the SF-50. I cannot access the Employee Express account to retrieve it.

8. You have been provided with the Declaration of **Leslie Holland** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:
**Items 3 & 4:** Ms. Holland reports to Ms. Reed who reports to Mr. Heinlein. Ms. Holland is also a very close friend of Mr. Murphy (who was involuntarily reassigned to HQ), and during my

Declarant's Initials

detail working for her in Support Services, she even bragged to me about how much time Mr. Murphy spent in her office behind closed doors on a comfortable sofa with his feet up.

Ms. Holland knows very well that I proved Mr. Heinlein wrong in the EEO complaint settled June 29, 2021, and she is working together with others in the chain of command to deny the truth, protect Mr. Heinlein (and Mr. Murphy), grind me down, and get rid of me. If she doesn't, she too could face adversity with poor performance evaluations or other reprisal as I have experienced for speaking up.

**Item 16:** It is a fact that Ms. Holland waited 10 months (!) reach out to me to discuss my STAR award. The period of performance for the STAR award was December 2020 – April 2021. It was not until she was questioned in this EEO case process, on February 17, 2022, that she took action to submit the STAR award. She would not have processed the STAR award if I had not filed this EEO complaint of constructive discharge, and the previous EEO complaint of retaliation for speaking up.

**Closing Comments:**

Please look at the facts presented in this EEO constructive discharge case and my rebuttal, my prior EEO cases with BLM/DOI Alaska, and the PB 18-01 case filed against Mr. Murphy. These all demonstrate the collaborative, coercive workings of the named individuals in the chain of command working to get rid of me. The mental and emotional toll this has taken on me, resulting in ill-health and clinical depression, has been overwhelming. The working relationship with these BLM AK Leadership team members is damaged beyond repair. These individuals ruined me. I do not trust any of them as they have all been dishonest in their collective effort to cover for each other and thwart my career. They are many, I am one. My otherwise proud and successful federal career has abruptly ended with this messy, forced early retirement; a horrible way to end 37 years of dedicated federal service. All because I am not afraid to speak up about EEO and against hostility in the workplace.

END OF STATEMENT

I, **Laurie Thorpe,** declare under penalty of perjury, that the foregoing is true and correct.

_Laurie A. Thorpe_
(Declarant's Signature)

_april 9, 2022_
(Date)

Declarant's Initials 

## LAURIE THORPE REBUTTAL AFFIDAVIT - BLM-21-0352(MIXED)

**STATE OF ALASKA**       §
                                 §
**COUNTY OF MATANUSKA-SUSITNA** §

I, **Laurie Thorpe**, make the following statement freely and voluntarily to **Marcus Nichols**, who has identified himself as an EEO Contract Investigator for the Bureau of Land Management, investigating a complaint of discrimination filed on my own behalf, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear and affirm:

1. You have been provided with the Declaration of **Callie Webber** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:

**Items 3 & 4:** Ms. Webber reports to Kent Slaughter who reports to Erika Reed. While I find no wrong-doing with Mr. Slaughter, he has to be silent/neutral in this matter or he too will suffer adverse consequences, as he reports to Ms. Reed who is one of the large group of BLM AK Leadership Team members working against me and my success, protecting Mr. Heinlein and Mr. Murphy, who have both violated EEO and foster the coercive hostile work environment for their personal interests. Their personal interests are to get rid of me because I speak up about EEO and against hostility in the workplace, and I proved both Mr. Heinlein and Mr. Murphy wrong/in violation. (See EEO case settled June 29, 2021; See PB 18-01 complaint against Mr. Murphy 2021 which contributed to his involuntary reassignment to HQ.) Ms. Webber has to 'play the game' with Mr. Heinlein (and Mr. Murphy), or she will also suffer adverse consequences under their powerful chain of command over her. This is the collaborative, coercive chain of command in BLM Alaska who work together to squelch voices like mine.

**Item 7:** Ms. Webber is not telling the truth. The fact is she was involved in a previous EEO complaint with me. The affidavit signed by Callie Webber November 17, 2021, demonstrates prior EEO involvement with me. Ms. Webber is not being forthright with the nature of the activity, nor her involvement, when it occurred, and what the status is.

**Item 10:** Ms. Webber knows my age as we have discussed my age and my career development opportunities in the past.

**Item 11:** Ms. Webber is not telling the truth – she is aware of previous EEO complaints: See affidavit signed on November 17, 2021, by Ms. Webber. Ms. Webber acknowledges that I spoke

Page 1 of 4

Declarant's Initials _____

up about the women's restroom at the Anchorage Field Office because there was no heat in it, nor was there any ventilation; however, the men's restroom had heat and ventilation. The restroom complaint was many, many years ago, that facility no longer exists, the entire building was demolished and rebuilt.

**Item 14:** Ms. Webber is playing it safe in her answer to this question, just like the other individuals on the BLM AK Leadership team. They have to protect Mr. Heinlein's and Mr. Murphy's interests with the same messaging, otherwise they could suffer adverse consequences like I have for speaking up about EEO and against hostility in the workplace. Ms. Webber knows very well that Mr. Heinlein and Mr. Murphy have subjected me to disparate treatment over the years. It is still not clear to me if it is due to my age or gender, but it is undeniably connected to reprisal for me speaking up about EEO and against hostility in the workplace.

**Item 17:** Ms. Webber states that copies of my Chat from the February 17 all employee meeting was shared with BLM-AK-EEO. Not one person in the BLM-AK-EEO department, nor anyone from the BLM AK Leadership team, reached out to me to discuss my concerns with EEO violations, hostility in the workplace, or anything. This is a clear example of how powerful the BLM AK Leadership team has over people speaking up – they will not respond to concerns or complaints and nobody dares speak up about these issues in fear of reprisal. They just work together to get rid of anyone who speaks up. Notice how they all deny any previous EEO complaints from me that they were involved with, including the affidavits they provided.

   2. You have been provided with the Declaration of **Erika Reed** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response:

**Items 3 & 4:** Ms. Reed reports to Mr. Heinlein who reports to Mike Nedd. I have shared concerns about EEO violations and hostility in the workplace with Mr. Nedd during our 2021 Emerging Leaders program discussion with HQ Leadership, both Mr. Nedd and Ms. Nada Culver were present, as well asl the entire class of Emerging Leaders graduating class in 2021. The Emerging Leaders class was "2020" but we didn't graduate until 2021. This demonstrates the clear chain of command in BLM AK as well as on up to the HQ level that have been made aware of my concerns, but not one of them ever reached out to me to discuss any of it and how we can move forward in a more fair and legal manner. The discussion from Mr. Nedd and Ms. Nader during the Emerging Leaders session was general and rhetorical in nature, with no follow up with me to discuss my specific concerns. This is why I have no faith in our current Leadership and feel the working relationship has been damaged beyond repair, leading to demoralization, clinical depression, forcing my constructive discharge.

**Item 7:** Ms. Reed is not telling the truth. She in fact was named in prior EEO complaint involving me. See affidavit signed by Ms. Reed November 19, 2021, demonstrating prior EEO involvement with me.

Declarant's Initials 

**Item 10:** Ms. Reed knows my age and that I am older than she is. We have known each other since 1997 when we both worked for the Tongass National Forest in Juneau, AK.

**Item 11:** Ms. Reed is inappropriately speaking for other BLM AK staff with whom I worked with. Ms. Reed was not part of the planning team I worked with. I had to work with Ms. Reed on a couple of isolated Lands & Realty issues for the projects I was managing. Ms. Reed falsely accuses me of being abrasive and not communicating well, when in fact I was working positively with difficult issues to find resolution and documentation for our administrative records so our environmental impact statements (EIS's) would pass legal muster, thus keeping us out of litigation. Ms. Reed is trying to make me look like a bad person in her quest to get rid of me, but this is not consistent with the statements from others named in my EEO complaints. As far as cc'ing Ms. Reed on emails — I have always felt it is better to keep potentially interested stakeholder staff/managers informed rather than be accused of not sharing information.

Regarding Ms. Reed's allegation that I was the "wrong fit" for the planning position working under Ms. Serena Sweet – she is simply wrong. I applied and competed for the temporary GS-12 assignment, as Ms. Sweet selected me for the position. Ms. Sweet always told me I was doing a great job. I was able to lead many large controversial NEPA projects forward and through completion, with hugely successful interagency collaboration and public involvement. I was consistently rated with 4's and 5's out of possible 5 being the highest performance evaluation rating. Furthermore, many of the other planning team members came to me for advice and assistance based on my experience and success.

**Item 13:** Ms. Reed is one of the several named members of the BLM AK Leadership team who is working against me to protect Mr. Heinlein and Mr. Murphy, both of whom I have proven wrong. Ms. Reed simply does not like me, she never has. Ms. Reed has an unusually awkward, close relationship with Mr. Murphy, further complicating things.

**Closing comments:**
Please look at the facts presented in this EEO constructive discharge case and my rebuttal, my prior EEO cases with BLM/DOI Alaska, and the PB 18-01 case filed against Mr. Murphy. These all demonstrate the collaborative, coercive workings of the named individuals in the chain of command working to get rid of me.

All of the individuals named in my EEO case of retaliation and constructive discharge have denied prior EEO activity with me that involves them. The fact remains: they are all named and were involved in prior EEO activity with me. This clearly demonstrates how they are working together collaboratively, and coercively, to silence my voice as I speak up about EEO and against hostility in the workplace.

The mental and emotional toll this has taken on me, resulting in ill-health and clinical depression, has been overwhelming. The working relationship with these BLM AK Leadership team members is damaged beyond repair. These individuals collectively ruined me. I do not trust any of them as they have all been dishonest in their combined effort to cover for each other

Page 3 of 4

Declarant's Initials

and thwart my career. They are many; I am one. My otherwise proud and successful federal career has abruptly ended with this messy, forced early retirement; a horrible way to end 37 years of dedicated federal service. All because I am not afraid to speak up about EEO and against hostility in the workplace.

END OF STATEMENT

I, **Laurie Thorpe**, declare under penalty of perjury, that the foregoing is true and correct.

(Declarant's Signature)          4/10/2022
                                 (Date)

Declarant's Initials

## LAURIE THORPE REBUTTAL AFFIDAVIT - BLM-21-0352(MIXED)

STATE OF ALASKA       §

                                  §

COUNTY OF MATANUSKA-SUSITNA   §

I, **Laurie Thorpe**, make the following statement freely and voluntarily to **Marcus Nichols**, who has identified himself as an EEO Contract Investigator for the Bureau of Land Management, investigating a complaint of discrimination filed on my own behalf, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear and affirm:

1. You have been provided with the Declaration of **Erika Reed** for review. Is there any additional information you would like to provide into the record (which was not previously addressed in your initial affidavit) in response to testimony? If so, please provide that information in a response to this question.

Response: *Updated April 21, 2022, based on additional information provided in a signed affidavit from Ms. Reed (received April 21, 2022). Previous affidavit provided from Ms. Reed was not signed, and additional information was provided in her more recent signed affidavit.*

**Items 3 & 4:** Ms. Reed reports to Mr. Heinlein who reports to Mike Nedd. I have shared concerns about EEO violations and hostility in the workplace with Mr. Nedd during our 2021 Emerging Leaders program discussion with HQ Leadership, both Mr. Nedd and Ms. Nada Culver were present, as well as the entire class of Emerging Leaders graduating class in 2021. The Emerging Leaders class was "2020" but we didn't graduate until 2021. This demonstrates the clear chain of command in BLM AK as well as on up to the HQ level that have been made aware of my concerns, but not one of them ever reached out to me to discuss any of it and how we can move forward in a more fair and legal manner. The discussion from Mr. Nedd and Ms. Nader during the Emerging Leaders session was general and rhetorical in nature, with no follow up with me to discuss my specific concerns. This is why I have no faith in our current Leadership and feel the working relationship has been damaged beyond repair, leading to demoralization, clinical depression, forcing my constructive discharge.

**Item 7:** Ms. Reed is not telling the truth. She, in fact, was named in prior EEO complaint involving me. See affidavit signed by Ms. Reed November 19, 2021, demonstrating prior EEO involvement with me.

**Item 10:** Ms. Reed knows my age and that I am older than she is. We have known each other since 1997 when we both worked for the Tongass National Forest in Juneau, AK.

**Item 11:** Ms. Reed is inappropriately speaking for other BLM AK staff with whom I worked with. Ms. Reed was not part of the planning team I worked with. I had to work with Ms. Reed

Page 1 of 3

Declarant's Initials



only on a couple of isolated Lands & Realty issues for the projects I was managing. Ms. Reed falsely accuses me of being abrasive and not communicating well, when in fact I was working positively with difficult issues to find resolution and documentation for our administrative records so our environmental impact statements (EIS's) would pass legal muster, thus keeping us out of litigation. Ms. Reed is trying to make me look like a bad person in her quest to get rid of me and protect Mr. Murphy, but her allegations are not consistent with the statements from others named in my EEO complaints, nor from anyone I worked with. Ms. Reed is simply trying to make me sound/look like a bad person with such allegations.

Regarding my actions of cc'ing Ms. Reed on emails – I have always felt it is better to keep potentially interested stakeholder staff/managers informed rather than be accused of not sharing information. I consider that good business practice, and most reasonable managers would agree.

Regarding Ms. Reed's allegation that I was the "wrong fit" for the planning position working under Ms. Serena Sweet – she is simply wrong. I applied and competed for the temporary GS-12 assignment, as Ms. Sweet selected me for the position based on my skills, expertise, and ability to coordinate large, controversial projects with multiple agencies and diverse opinions. Ms. Sweet always told me I was doing a great job. I was able to lead many large controversial NEPA projects forward and through completion, with hugely successful interagency collaboration and public involvement, juggling multiple priorities. I was consistently rated with 4's and 5's out of possible 5 being the highest performance evaluation rating. Furthermore, many other planning team members frequently came to me for advice and assistance based on my experience and success. Ms. Sweet also would leave me in charge when she was on Annual Leave or otherwise out of the office, as she trusted my skills and ability to manage the program in her absence. Ms. Reed is simply trying to paint a bad picture of me and has no factual basis to make such ludicrous claims.

Ms. Reed alleges I got "what [I] wanted" in a former EEO case settlement when Mr. Padgett was State Director. That is not true. I was told the GS-12 Planning position at Anchorage District Office was the only GS-12 position they could offer me in my field of expertise as settlement. I requested a position in the AK State Office because I didn't want to be working directly for Mr. Heinlein (Anchorage District Manager at the time) as he is the one who told me if I didn't redo my resume to qualify for a GS-11 Fire/Fuels Planner in his office that I would be fired. I knew Mr. Heinlein was wrong and he was trying to subdue me and otherwise get rid of me with that direction. I had a written agreement that I could go back to my former GS-11 Natural Resource Specialist (or equivalent) position I held at Anchorage Field Office from 2007 – 2014, with no need to reapply, re-do my resume, or compete for the position. Thus, my EEO case against Mr. Heinlein. Please see that supporting documentation in my previous EEO complaint.

**Item 13:** Ms. Reed is one of the several named members of the BLM AK Leadership team who is working against me to protect Mr. Heinlein and Mr. Murphy, both of whom I have proven wrong. Ms. Reed simply does not like me, she never has. Ms. Reed has an unusually awkward, close relationship with Mr. Murphy, further complicating things.

**Item 18:** Regarding Ms. Reed's allegation that staff (those receiving LOS awards) had to go into the office to receive LOS awards, that is not true. There were several LOS awards given out

during the Covid Telework situation via Teams (virtual meeting software) all-employee meetings. LOS recipients got much peer recognition, comments, and accolades via the Teams meeting platform. Ms. Reed attempts to justify the issue of me not getting any of my earned LOS awards by pointing to other employees involved in the process – specifically lower pay-grade administrative assistants. The fact remains that I was not given my LOS awards despite several other staff receiving theirs (mostly old white men). Agreed, Ms. Mahlen was not in her position for my 25- or 30-year LOS milestones, but Mr. Murphy, Ms. Holland, and several Human Resources staff members were in place, all under the ultimate direction of Mr. Murphy.

**Closing comments:**
Please look at the facts presented in this EEO constructive discharge case, my rebuttal, my prior EEO cases with BLM/DOI Alaska, and the PB 18-01 case filed against Mr. Murphy. These all demonstrate the collaborative, coercive workings of the named individuals in the chain of command working to get rid of me.

All of the individuals named in my EEO case of retaliation and constructive discharge have denied prior EEO activity with me that involves them. The fact remains: they are indeed all named and were involved in prior EEO activity with me. This clearly demonstrates how they are working together collaboratively, and coercively, to silence my voice as I speak up about EEO and against hostility in the workplace.

The mental and emotional toll this has taken on me, resulting in ill-health and clinical depression, has been overwhelming. I had no intention of leaving my federal employment this soon. Transferring to a different federal agency at this stage in my career was certainly not in my career path as I had recently graduated from the BLM Emerging Leaders Program and wanted to grow my career, and give back to, the agency that supported me through that training and development program. The working relationship with these BLM AK Leadership team members is damaged beyond repair. These individuals collectively ruined me. I do not trust any of them as they have all been dishonest in their combined effort to cover for each other and thwart my career. They are many; I am one. My otherwise proud and successful federal career has abruptly ended with this messy, forced early retirement; a horrible way to end 37 years of dedicated federal service. All because I am not afraid to speak up about EEO and against hostility in the BLM AK workplace. If not me, then who? If not now, then when? Someone, sometime, has to speak up, and I have.

END OF STATEMENT

I, **Laurie Thorpe,** declare under penalty of perjury, that the foregoing is true and correct.

_(Declarant's Signature)_   _april 21, 2022_
   (Date)

Declarant's Initials

## CHAD PADGETT AFFIDAVIT

| STATE OF ALASKA | § |
| | § |
| COUNTY OF MATANUSKA-SUSITNA | § |

I, **Chad Padgett**, make the following statement freely and voluntarily to **Marcus Nichols**, who has identified himself as an EEO Contract Investigator for the Bureau of Land Management, investigating a complaint of discrimination filed by Laurie Thorpe, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear and affirm:

1. **What is your full name?**

   Response: Chad Padgett.

2. **What is the name of the agency for which you work?**

   Response: State Director for Senator Dan Sullivan - Alaska.

3. **What is the address of your duty station?**

   Response: 510 L Street, Suite 750, Anchorage, AK 99501.

4. **Were you employed with the Bureau of Land Management? If yes, what dates were you employed with BLM and to which duty station were you assigned?**

   Response: Yes, I was employed with BLM-Alaska from March 2019 to September 3, 2021.

5. **How long were you employed by the Department of the Interior (DOI)?**

   Response: My employment dates with DOI are the same as my time of employment with BLM-Alaska; March 2019 to September 3, 2021.

6. **During the period from August 13, 2021, to August 24, 2021, what was your title and grade and for what period of time?**

   Response: I was employed as the State Director BLM-Alaska, ES-01, from March 2019 to September 3, 2021.

   August 4, 2021– September 3, 2021, I was temporarily assigned to a 120-day detail to Special Advisor to Deputy Director of Operations. This temporary detail was a telework position up to the time of my separation from the agency.

Declarant's Initials *[signature]*

**7. During the period August 13, 2021, to September 29, 2021, who was your first level supervisor, to include position title and period of time?**

Response: My first line supervisor during the relevant time period was, Mr. Mike Nedd, Deputy Director for Operations, the entire time I was employed by BLM-Alaska.

**8. During the period August 13. 2021 to September 29, 2021, who was your second level supervisor, to include position title and period of time?**

Response: My second line supervisor from January 2021 until September 3, 2021, was Ms. Laura Daniels-Davis, Acting Assistant Secretary for Lands and Minerals.

Prior to that, March 2019 to January 2021, my second line supervisor was Mr. Casey Hammond, Acting Assistant Secretary for Lands and Minerals.

**9. Please identify your age for the record.**

Response: My age is 50, YOB: 1971.

**10. Please identify your sex for the record.**

Response: Male.

**11. Do you have any prior or current EEO activity of your own (yes/no)?**

Response: No.

**12. What was your organizational relationship (first/second line supervisor, Team Leader, coworker, and etc.) to Complainant and for what period of time?**

Response: While I was employed as the State Director BLM-Alaska, Complainant was under my organizational leadership, and I was her fourth-line supervisor.

**13. Are you aware of Complainant's sex? If yes, what is her sex?**

Response: I am aware of Complainant's sex; she is a female.

**14. Are you aware of Complainant's age? If yes, what is her age?**

Response: I am not specifically aware Complainant's age, but I believe she is generally around my age.

**15. Are you aware of Complainant's prior EEO activity? If yes, indicate your knowledge/involvement, and when and by whom were you made aware?**

Response: Yes, I am aware that Complainant has prior EEO activity, to which I became aware of around March of 2021 when she directly told me about her prior EEO claims and continuing issues that she was having with management. I also worked with BLM-EEO regarding

Declarant's Initials

Complainant's prior EEO claim filed in June 2021, in which Complainant alleged that her position was taken off the board while she was on a five-year temporary promotion to AKSO Planning and no one could find her a replacement position that she would qualify for.

**Background**

Complainant was on temporary promotion, to a five-year detail at AKSO Planning, and that detail was ending. Complainant was worried about the status of her employment once the detail would end, because it appeared that her previous position was no longer available. Because of her concerns Complainant began telling me about her past EEO complaints and her concern that it was hurting her career. It was Complainant's belief that her prior EEO was the reason why there was no position available to her upon her return from the BLM Alaska State Office.

Complainant initially told me about her prior EEO activity in approximately March 2021. Complainant also made me aware when she filed a complaint in May or June 2021, which was similar in issues to this current complaint. Complainant and I discussed the background of her claims and that nothing had happened. I referred Complainant to the appropriate channels to make sure her concerns were being handled.

I ended up being the deciding official in Complainant's prior EEO case filed in June 2021. I elected to settle the case with her in June 2021. My decision to settle with Complainant was based on a couple of reasons. In part, the AKSO through Ted Murphy and Christine Mahlen was responsible for not taking care of Complainant when she returned from her temporary promotion from the AKSO. The other reason I settled was due to Mr. Murphy's attitude towards Complainant as he viewed her as a "chronic filer" who he refused to "deal with. In consultation with HR and EEO managers at headquarters it was clear that Mr. Murphy, Ms. Mahlen, and Tom Heinlein had caused, pain and anguish to Ms. Thorpe by their actions. Specifically that they refused to return her to her former position after the detail ended and would give her no clarity in her future employment. They were trying to force her out of the bureau as they did not like that she had filed multiple complaints.

16. **Are you aware of Complainant speaking up about discrimination and EEO issues within BLM Alaska? If yes, indicate your knowledge/involvement, and when and by whom were you made aware?**

Response: Yes, Complainant brought her concerns of discrimination and EEO issues within the agency, directly to me and on multiple occasions. Beginning in approximately March 2021, Complainant and I discussed the background of her EEO claims and that nothing had happened to resolve any of those issues. As a result of those discussions, I referred Complainant to the appropriate EEO channels to make sure her concerns were being handled.

I had an open-door policy for people to come to me if they had issues. If an employee brought a concern to me, I would go to their supervisor and address the concern. It was well known within BLM Alaska that anyone could come to me I would take their concerns to their supervisor. If there was an uncomfortable situation involving the supervisor, I would elevate the issue to the appropriate level. Multiple employees took me up on the policy. I would bring employee concerns to our weekly leadership team meetings.

**Complainant asserts the following**: "*Management is aware that I have been consistently speaking up against discrimination and equal employment opportunity violations within BLM Alaska. I sent an email to Chad Padgett, Alaska State Director on May 24, 2021, forwarding an email from Mr. Heinlein and expressing my concerns of EEO violations within BLM Alaska.*"

Response: This is true, Laurie expressed concerns to which I forwarded to Mary Huber-Thompson, spoke to Mr. Heinlein, Mr. Murphy, and Christine Mahlen to favorably resolve her complaint.

**Complainant asserts the following**: "*Mr. Padgett can testify how I had been speaking up about EEO.*"

Response: Laurie has raised multiple concerns with the management at BLM and I have firsthand knowledge of her complaints. Mr. Murphy, Mr. Heinlein, Ms. Mahlen all viewed her as a chronic filer. I directed that they place her into her former position at the District Office. They did not follow my directives even after the EEO Program in Headquarters through Angela James told them to on multiple occasions. They were trying to force her out of the office and they were attempting to get her to quit. . I attempted to resolve those issues favorably for Laurie while also taking appropriate actions with BLM management in Alaska as they were credible concerns. I was removed from my position through a temporary reassignment and told I was creating turmoil in the office due to me trying to in part, resolve this situation. The person who removed me was Mike Nedd with Mary Huber-Thompson witnessing.

**Complainant asserts the following**: "*Mr. Padgett can testify to the inappropriate administration set up of the Associate State Director controlling the outcome of all EEO and Hostility complaints.*"

Response: Laurie is correct. All EEO complaints were sent through Mr. Murphy for his subordinate employees. Mr. Murphy would not take any action to resolve complaints but rather spin the problem back to the complainant. I was contacted by the Office of Personal Responsibility and EEO from HQ multiple times about his lack of response.

**Complainant asserts the following**: "*Mr. Padgett also has first-hand knowledge and experience with inappropriate BLM Alaska Human Resources actions under the direction of the Associate State Director (Ted Murphy and Erika Reed - currently acting for Ted Murphy) and Deputy State Director for Support Services (Leslie Holland).*"

Response: Mr. Murphy and Ms. Reed have an inappropriate relationship as supervisor and employee. They have a deep personal relationship. Instead of working to resolve personnel problems under their respective purviews, they simply work to shift the burden and reassign people to other positions through "temporary details". It has happened on multiple occasions with other employees.

**Complainant asserts the following**: "*Mr. Padgett knows first-hand about the corruption in the BLM AK management team and how they team up to try to get rid of people like me who speak up and daylight the inappropriate actions, EEO violations, etc.*"

Response: please see above responses.

Declarant's Initials

**17. Are you aware of Complainant speaking up about discrimination and EEO with respect to anyone other than you? If yes, indicate your knowledge/involvement, and when and how you made aware?**

Response: Yes, Mary Huber-Thompson, HR Specialist, out of Idaho was working on behalf of HQ, supporting BLM-Alaska to make sure we were not doing anything inappropriate with respect to HR. Ms. Huber-Thompson was copied on all conversations Complainant regarding her EEO concerns.

**18. Complainant alleged she was subjected to disparate treatment and nonsexual harassment, based on age, sex and reprisal (prior EEO activity) as it relates to the following:**

**Claim A. From August 13 – 24, 2021, RMO1 (Callie Webber) and RMO2 (Christine Mahlen) utilized a non-competitive appointment method to fill and process a detail to the GS-13 Associate District Manager, Anchorage District Office position, preventing Complainant an equal opportunity to apply and compete for the position.**

**Claim B. From August 23 – 24, 2021, Complainant was disrespected and demoralized when Marnie Graham (Glenallen Field Office Manager), Christine Mahlen (BLM Alaska HR Officer), and Joy Edge (BLM Alaska HR Specialist) intentionally copy furnished Complainant on emails regarding placement and on-boarding of the individual non-competitively appointed to the GS-13, Associate District Manager.**

**Claim C. As of September 29, 2021, RMO1 (Callie Webber) has not added Complainant's name to the BLM Alaska Organizational Chart.**

**Are you responsible for subjecting Complainant to harassment and/or disparate treatment, as it relates to these claims? If yes, please explain why.**

Response: No, I do not believe that I am responsible for subjecting Complainant to harassment and/or disparate treatment.

**19. Are you aware of anyone subjecting Complainant to disparate treatment and/or non-sexual harassment as it relates to these claims? If yes, state who subjected her to disparate treatment and/or nonsexual harassment, when the incident occurred, what actions were taken and how and when you became aware. If no action taken, please explain why no action was taken.**

Response: Yes, I believe that Mr. Ted Murphy, Ms. Christine Mahlen and Mr. Tom Heinlein are responsible for subjecting Complainant to disparate treatment and/or non-sexual harassment as it relates to the reprisal aspect of the claims.

**Background**

In April 2021, Complainant was coming back former GS-12 temp. I looked at the Table of Organization (TO) and said lets at least put Complainant back into her old position and back to a GS-11. I then learned that Complainant no longer had a position to return to and the position no

longer existed in the TO. At this point, I was concerned because we, as management, were obligated to put Complainant back into the position she left.

It appeared that Complainant's position disappeared from one of the Table of Organizations (TO), but not from the other. BLM Alaska's official TO, which is referred to as the HERO-TO (Highly Efficient Reliable Organization), had Complainant's position listed. There is another chart that floats around, and it was not correct, it did not have Complainant's position listed and it did not match the HERO chart.

- As the State Director, I had to approve every position on the TO and my Associate State Director, Ted Murphy, had to sign off on the TO as well. Once we both signed off on the TO, it then goes to Mr. Nedd for final approval. The HERO-TO reflects this process.

I reached out to Mr. Heinlein to ask why Complainant's position was gone and learned that they were relying on an unofficial TO. I instructed Mr. Heinlein to take the unofficial TO out of circulation and replace it with the HERO-TO; however, my instructions were met with resistance from Mr. Murphy, Mr. Heinlein and Ms. Mahlen. I am not sure why they resisted the change, I suspect that they did not want Complainant's position added into the TO, so management could say that Complainant's position did not exist.

For a few months Complainant was on spin cycle while management tried to find her a GS-11 or GS-12 position that she could qualify for.

In May 2021, there was a permanent GS-12 Planning position in the Alaska District Office that came open and management did not get give it to Complainant. Ms. Webber and Mr. Heinlein non-competitively promoted Ms. Jorjena Barringer into the position. Mr. Heinlein and Ms. Webber knew that Complainant needed a position.

I asked Ms. Mahlen and Mr. Murphy why this had happened, and all that I was that since I was a decision maker, I could not be involved in the discussion. I told Ms. Mahlen and Mr. Murphy that they were wrong and since the issue was related to a position under my direction, I needed to know what the reasoning was. Management knew that Complainant need a position and they knew that Complainant had prior EEO when they non-competitively assigned Ms. Barringer into that GS-12 Planner position.

Complainant contacted me via email on May 24, 2021, asking why she was not given the opportunity to compete for the GS-12 Planner position.

I thought Complainant's claims had some merit so I spoke with Angela James, BLM-EEO, and she validated that we should have returned her to her former position.

After talking to Ms. James, BLM-EEO, I directed Mr. Murphey, Ms. Mahlen, Mr. Heinlein, copying Ms. James and Mr. Nedd to return Complainant to her position that she held before she left for the AKSO Planner temporary promotion. I received a nasty email from Mr. Murphy telling me that I did not know what I was doing, and I should find something some other job.

Mr. Murphy's attitude towards Complainant and myself was subject to his evaluation. Mr. Murphy was my only report, and when I did my last performance evaluation on him, this this was

all discussed. Ms. Mary Huber-Thompson, HR, was on the phone and in on the discussion regarding Mr. Murphy's behavior. Also addressed and recorded during Mr. Murphy's performance evaluation, was the multiple (seven) EEO complaints filed against Mr. Murphy, due to his issues with female employees. After I gave the poor performance evaluation to Mr. Murphy, he filed multiple PB-18-01's against me.

I was trying to deal with Complainant's problems the way I should have. Then by August 4, 2021, I was temp assigned to HQ with 4 hrs. notice by Mike Nedd who is protecting his cronies at the Alaska State office.

On August 4, 2021, I was moved out of my position and put into the Special Advisor to Deputy Director of Operations detail. At that point, I was told by Mr. Nedd that I could not respond to anything or take any action regarding BLM Alaska. I could not do anything to help Complainant.

20. **Complainant alleged she was subjected to the following incidents of alleged harassment. Please respond accordingly and detail what occurred and whether she was harassed based on her age, sex and disability.**

**Claim A**: From August 13 – 24, 2021, RMO1 (Callie Webber) and RMO2 (Christine Mahlen) utilized a non-competitive appointment method to fill and process a detail to the GS-13 Associate District Manager, Anchorage District Office position, preventing Complainant an equal opportunity to apply and compete for the position.

**Complainant asserts the following**: "*I was discriminated against by Ms. Webber and Ms. Mahlen, when I was not given the equal employment opportunity to apply and compete for the GS-13, Associate District Manager detail in Alaska. Instead of asking for interest, a personal friend of Ms. Webber, Ms. Hueckman, was non-competitively placed into the opportunity.*

*When deciding to fill this vacancy, there was no outreach by management asking for anyone's interest. Management acted to non-competitively fill the vacancy with Ms. Webbers friend so swiftly that there was no opportunity for other interested parties, like me, to express interest and have the opportunity for the detail.*

*I believe that using "management's discretion" is a way to fill positions without equal employment opportunity competition. It is a covert way that BLM Alaska Human Resources and Managers use to violate EEO laws. This management scheme effectively prevents employees like me from being able to apply and compete for details and permanent fulltime career growth opportunities.*

*Ms. Webber said it was a rush, so I feel that they could have rushed me into the position just as easily. They are abusing the privilege of the non-competitive detail appointment. Ms. Webber also said that I did not have the experience for the position. Management will flaunt other job opportunities to me outside of Alaska, trying to get rid of me, but when there is one here in Alaska, they non-compete the position.*"

**Date:** August 2021.

**Incident:** I do not have direct knowledge but I can asset that there was nothing going on at that time that would have required a rush job. Things did happen quickly but no need to rush to fill a vacancy such as that. By this time most of the budget close out would have been almost done. On August 4, 2021, I was moved out of my position and put into the Special Advisor to Deputy Director of Operations detail. At that point, I was told by Mr. Nedd that I could not respond to anything or take any action regarding BLM Alaska. I could not do anything to help Complainant.

I am not sure if Complainant would have been qualified or not for this position, but I know that she had acted in a position that would have been in line with that same type of work. The point is management needs to give employees the opportunity to compete and find out if they are qualified or not. This organization does not work that way.

**Response (Was Complainant harassed based on her age sex and/or prior EEO activity?):** Absolutely yes, I do believe that Complainant was subjected to harassment based on prior EEO activity. I also believe that Mr. Murphy subjected Complainant to harassment based on her being female. It is well known throughout the entire Bureau of Land Managment that Mr. Murphy has issues with females.

I have observed Mr. Murphy singling out a female employee and hyper-focusing on that female and we had multiple employees complaining about it. Mr. Murphy and Ms. Reed brought their outside relationship into the office, which was addressed by me and two of my predecessors. Mr. Murphy would also take females like Complainant, who he felt had crossed him, and he would hyper-focus on them and try to make their lives miserable and run them out. For Example, he would not communicate with them, not show up to their evaluations, he would be very rude. Specifically, to Complainant, he would roll his eyes at her and would say things under his breath about her. Other employees such as Ms. Eileen Frost (didn't show up at her eval) and Ms., Leslie Ellis-Wouters would also have issues with Mr. Murphy, and were discussed in his performance evaluation.

**Claim B: From August 23 – 24, 2021, Complainant was disrespected and demoralized when Marnie Graham (Glenallen Field Office Manager), Christine Mahlen (BLM Alaska HR Officer), and Joy Edge (BLM Alaska HR Specialist) intentionally copy furnished Complainant on emails regarding placement and on-boarding of the individual non-competitively appointed to the GS-13, Associate District Manager.**

**Complainant asserts the following:** "*Management was in the process of onboarding Ms. Hueckman into the Associate District Manager position, and while doing so, they were having issues with the FPPS system. During that discussion of getting Ms. Hueckman moved into the detail I was intentionally copied on an email that I had no business being on. This was done just to flaunt the fact that they knew I was seeking opportunities and that they had deliberately given the opportunity to someone else.*

*All three of these people (Graham, Edge and Mahlen) know I am looking for career progression in Alaska and they are doing everything they can to demoralize me and thwart me from progression my career in BLM Alaska. This has caused more emotional trauma, demoralization, is hugely disrespectful to me, and displayed very unprofessional behavior of them.*"

**Date:** Unspecified



**Incident:** I have no direct knowledge of this incident. On August 4, 2021, I was moved out of my position and put into the Special Advisor to Deputy Director of Operations detail.

**Response (Was Complainant harassed based on her age sex and/or prior EEO activity?):** I have no direct knowledge of this incident.

Mr. Heinlein, Ms. Mahlen and Mr. Murphy all would comment that Complainant is a "Chronic filer" and that she is not qualified for the positions that she applies for. I am not HR, but it does not seem right that Complainant does a GS-12 Planner detail for five years at the State Office and then applies for the same GS-12 Planner position at the District Office and somehow is not qualified. The truth is Mr. Heinlein, Ms. Mahlen and Mr. Murphy did not want to deal with Complainant because they thought of her as a chronic EEO filer.

<u>Claim C:</u> **As of September 29, 2021, RMO1 has not added Complainant's name to the BLM Alaska Organizational Chart.**

**Complainants asserts the following:** *"I was not recognized on any of the BLM Alaska Organization charts. This is a continued insult to me and an effort by BLM Alaska to demoralize me and force me into quitting or early retirement.*

*The BLM Alaska Management Team is working together to try and get rid of me by removing my name from the organization charts. There are employees who are new to the agency or have taken a new job within BLM Alaska within the past 5 months, and who are readily recognized on the organization charts. My name has been removed from the BLM Alaska organization charts since April 16, 2021, when I concluded a temporary assignment working for Serena Sweet in the Planning shop at the BLM Alaska State Office. This is insulting, demoralizing and a blatant act of reprisal against me. Management was ordered to put my name on the Alaska organization charts – an outcome of my previous EEO complaint – but they have neglected to take the action.*

*I learned recently that I am now on the org chart. On October 12, 2021, I was notified by Amanda Coffee, Administrative Support Assistant under Ms. Weber, sent me an email about calendars and mentioned that she forgot to include me on the email. Ms. Coffee said that she used an outdated org chart and had forgot to include me on the email, but she looked at the current org chart and found me on that.*

*Management did not hesitate to remove my name in May after my temporary promotion working for AKSO Planning under Serena Sweet had ended. But they waited until I filed this EEO complaint to add my name to the chart in October. They should have added it in April or July 2021 at the latest."*

**Date:** September 29, 2021

**Incident:** I have no direct knowledge of this incident. On August 4, 2021, I was moved out of my position and put into the Special Advisor to Deputy Director of Operations detail.

**Response (Was Complainant harassed based on her age sex and/or prior EEO activity?):** Yes. Mr. Heinlein, Ms. Mahlen and Mr. Murphy all would comment that Complainant is a


E-0088 8
Page 9 of 12
Case 3:25-cv-00077-SLG   Document 1   Filed 04/17/25   Page 50 of 53

"Chronic filer" and that she is not qualified for the positions that she applies for. I am not HR, but it does not seem right that Complainant does a GS-12 Planner detail for five years at the State Office and then applies for the same GS-12 Planner position at the District Office and somehow is not qualified. The truth is Mr. Heinlein, Ms. Mahlen and Mr. Murphy did not want to deal with Complainant because they thought of her as a chronic EEO filer.

21. **Please respond to Complainant's claim that she was treated differently than others as it relates to the following claims. Please respond accordingly and indicate whether Complainant was subjected to disparate treatment, and if so, please explain why.**

**Claim A: From August 13 – 24, 2021, RMO1 and RMO2 utilized a non-competitive appointment method to fill and process a detail to the GS-13 Associate District Manager, Anchorage District Office position, preventing Complainant an equal opportunity to apply and compete for the position.**

Complainant's assertions: *"Susan Hueckman received the detail for Associate District Manager, without issue."*

Response: I have no direct knowledge of this incident

**Claim B: From August 23 – 24, 2021, Complainant was disrespected and demoralized when Marnie Graham (Glenallen Field Office Manager), Christine Mahlen (BLM Alaska HR Officer), and Joy Edge (BLM Alaska HR Specialist) intentionally copy furnished Complainant on emails regarding placement and on-boarding of the individual non-competitively appointed to the GS-13, Associate District Manager.**

Complainant's assertions: *"This claim goes more directly to harassment. I do not necessarily have anyone to say was treated more fairly in this situation other than everyone who has not been blatantly copied on an email like this just to disrespect and demoralize as they were doing to me."*

Response: **I have no direct knowledge of this incident**

**Claim C: As of September 29, 2021, RMO1 has not added Complainant's name to the BLM Alaska Organizational Chart.**

Complainant's assertions: *"Periodically published organization charts show multiple changes over time, including my name being removed in the May version, not re-added until October after I filed this EEO complaint."*

Response: I have no direct knowledge of this but can say that normally a person is added to the TO immediately.

22. **Did Complainant complain to management about any of the incidents she noted? If so, which incidents, when, to whom, and what did she say?**

Response: Complainant did contact me about the specific claims noted in this Complaint, however, I was temporarily assigned to HQ and could do nothing about it. Prior to this incident

and directly relevant to reprisal; Complainant contacted me via email on May 24, 2021, asking why she was not given the opportunity to compete for the GS-12 Planning position in the Alaska District Office that had just been non-competitively given to Ms. Jorjena Barringer.

### 23. If Complainant complained, did she say she felt harassed or treated differently than others or discriminated against or otherwise by these incidents?

Response: Yes, but I was not in a position where I could do anything about it by that time due to Mike Nedd using an inappropriate tactic of reassigning me to his office and giving me a direct order to have no contact with Alaska staff.

### 24. Did anyone in management take any preventive or corrective actions as a result of her complaint(s)? If so, describe the actions taken and when. If no action taken, please explain why no action taken?

Response: No. To my knowledge management did not do anything and prevented me from helping. Prior to these claims and directly relevant to reprisal; I thought Complainant's previous claims of harassment had some merit so I spoke with Angela James, BLM-EEO, and she validated that we should have returned her to her former position.

After talking to Ms. James, BLM-EEO, I directed Mr. Murphy, Ms. Mahlen, Mr. Heinlein, copying Ms. James and Mr. Nedd to return Complainant to her position that she held before she left for the AKSO Planner temporary promotion. I received a nasty email from Mr. Murphy telling me that I did not know what I was doing, and I should find something some other job.

### 25. Was Complainant's protected sex, age and prior EEO activity factors in the incidents complained about? If yes, please explain why.

Response: Absolutely yes. Specifically, to Claim A, Complainant was subjected to harassment based on prior EEO activity by Mr. Muprhy, Mr. Heinlein and Ms. Mahlen. I also believe that Mr. Murphy subjected Complainant to harassment based on her being a female who speaks her mind and disagrees with him. It is well known throughout the office that Mr. Murphy has issues with females who disagree with him.

### 26. Have you received training on anti-harassment while employed by the Agency? If so, when? Please describe the training you received.

Response: Yes, we received anti-harassment training annually.

### 27. Is there anyone else who may have firsthand information to share with me that would be relevant to the allegations made in the formal complaint?

Response: Mary Huber-Thompson, HR, Angela James EEO, Mike Nedd, Deputy Director of Operations.

### 28. Do you have any documents to support your statement that you have not already provided under a request for documents? If yes, please provide a copy of those documents as an attachment to your affidavit.

Response: No.  due to my reassignment to Mr. Nedd, all of my materials were confiscated.  It's a great way for the Bureau to cover up for their misdeeds and to allow these kinds of complaints to continue.

**29. Is there anything you wish to add?**

Response: No, not at this time.

**I have reviewed this statement, which consists of <u>11</u> pages, and it is true and complete to the best of my knowledge and belief.  I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.**

X _____

Date: _____, 2021

Declarant's Initials _____